## Guarantee Trust and Safe Deposit Company of Mount Carmel, Appellant, *v.* Tye et al.

Argued October 26, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis Cohen,* with him *J. Grant Kehler,* for appellant.

*Carleton M. Strouss* and *Frank H. Strouss,* of *Strouss & Strouss, Franklick W. Magrady* and *C. Elmer John,* for appellees, were not heard.

OPINION BY KELLER, P. J., January 27, 1938:

The defendant, P. H. Tye, in 1928, subscribed for and became the registered owner of twenty shares of the 44th series of instalment stock of the Anthracite Building and Loan Association of Mt. Carmel. The association issued to him a pass-book or receipt book in which the secretary noted the monthly payments made on the stock. No stock certificate was issued to him. It was not the practice of the association to do so.

Mr. Tye was indebted to the First National Bank of Mt. Carmel. The bank having demanded of Tye additional collateral to secure the payment of his indebtedness to it, on January 18, 1934 he executed an assignment to the bank for the purpose of assigning and transferring to it his interest in said shares of stock, as collateral security for his indebtedness to it, and at the same time wrote a letter to the Anthracite Building & Loan Association, Attention Mr. Thomas Smith, Secretary, as follows: "Kindly deliver to the First National Bank, Mt. Carmel, Penna. certificate for 20 shares of stock held by me in your association. Very truly yours, P. H. Tye." This letter was delivered the same day by John T. Aston, a director of the bank and President of the Building & Loan Association to A. J. Brooks, Assistant Secretary of the Building & Loan Association, who placed it in the vault of the association, and delivered to Aston, acting for the bank, a writing in the following form: "January 18, 1934, To whom it may concern: This is to certify that P. H. Tye is the owner of Certificate No. 26 of the 44th Series representing twenty (20)

shares of common stock of the Anthracite Building and Loan Association of Mount Carmel, Pa. The withdrawal value on above date is $1,516.40. Anthracite Building & Loan Association, Mount Carmel, Pa., A. J. Brooks, Asst. Secretary."

A certificate of stock for the shares so assigned was not actually prepared, signed and delivered until January 23, 1934, when its attorney gave the same to John T. Aston for delivery to the bank, in accordance with the directions contained in Tye's letter of January 18, 1934, and it was so delivered.

On January 20, 1934 Guarantee Trust & Safe Deposit Company, which held a judgment for $1,800 against P. H. Tye and Frank J. Tye to No. 995 September Term, 1931, caused a writ of attachment execution to issue on said judgment, and summoned the Anthracite Building & Loan Association as garnishee. The attachment was served the same day on the defendant, P. H. Tye, and on Thomas Smith, Secretary of the garnishee association.

Interrogatories were filed and answered in general accord with the foregoing summary of the facts.

First National Bank of Mt. Carmel was permitted to intervene as a party, and all parties agreed that a trial by jury should be dispensed with and the case tried before a judge under the Act of April 22, 1874, P. L. 109, 12 PS 688.

Pursuant to said agreement the case was tried before Honorable H. W. CUMMINGS, A. L. J. who made findings of fact, which it is not necessary to state in detail, but substantially as above recited, and conclusions of law to the effect that the assignment to the bank executed and delivered by Tye on January 18, 1934, in conjunction with the letter signed and delivered the same day to the bank and its delivery to the Assistant Secretary of the Building and Loan Association, constituted a valid and legal assignment of Tye's stock

in the building and loan association and a good and effectual delivery of the same to the bank and operated to vest the title to said stock in the bank as security for Tye's debt to it; that Tye had done everything that reasonably could be done by him on January 18, 1934 to effect actual delivery to the bank of his shares of stock in the building and loan association, and the manual delivery of a certificate to the bank on January 23, 1934 related back to January 18, 1934, on which date Tye had assigned his interest in the stock; and that the only interest that Tye had in the stock on January 20, 1934, when the attachment issued and was served, was the right to redeem the stock on payment of the loan for which it was assigned as security; and that this right was on January 18, 1936 lost, by the bank taking over the stock absolutely in part satisfaction of Tye's debt.

Exceptions of the plaintiff to the findings of fact and conclusions of law were dismissed and judgment was entered in favor of the garnishee and against the plaintiff. Plaintiff appealed. The judgment will be affirmed.

An attaching creditor necessarily claims through his debtor and can acquire no greater right than the latter had against the garnishee when the writ was served on it. If before the attachment is served the debtor has made a valid assignment of the money due from the garnishee or of the fund or property in its hands, judgment cannot be entered against the garnishee: *Austin-Nichols Co. v. Union Trust Co.*, 289 Pa. 341, 137 A. 461; *Knight v. Red Ball Transit Co.*, 306 Pa. 371, 159 A. 715; *Jarecki Mfg. Co. v. Hart Bros.*, 5 Pa. Superior Ct. 422. An assignee of a chose of action, even though he has given the garnishee no notice of his assignment, has priority over a subsequent attaching creditor: *Phillips' Est. (No. 4)*, 205 Pa. 525, 530, 55 A. 216.

The facts found by the learned trial judge are sup-

ported by the evidence and sustain the judge's conclusions of law. They establish a valid assignment of the debtor's stock in the garnishee building and loan association made and delivered to the bank two days before the service of the writ of attachment; and that the debtor at the time of the execution and delivery of the assignment did everything that could reasonably be done by him to effectuate the transfer and delivery of the stock. The Uniform Stock Transfer Act of May 5, 1911, P. L. 126, does not apply to instalment stock of building and loan associations, so as to require the issuance and delivery of a stock certificate to a shareholder as a prerequisite to his acquiring ownership of stock. Even where a certificate of stock is issued, the provisions of the Uniform Act of 1911, p. 126, sec. 9, as to the passing of title as of the time of registration of the transfer are only for the protection of the corporation and not intended to control the right of a stockholder to transfer his rights to another: *Citizen's Nat. Bank v. Irwin B. & L. Assn.*, 316 Pa. 536, 539, 175 A. 399; *Connell's Est.*, 282 Pa. 555, 561, 128 A. 503. Shares of stock in a business or trading corporation are fundamentally different from instalment shares in a building and loan association. A share of stock in the former may be defined as one of the whole number of *equal* parts into which the capital stock of a trading company or corporation is or may be divided, 57 C. J. 560; Century Dictionary; each of the *equal* parts into which the capital of a joint-stock company or corporation is divided, Shorter Oxford Dictionary. But there is no equality among instalment shares of a building and loan association except in the same series. A share of instalment stock in a building and loan association is a contractual interest in the corporate property and control of the association, by the terms of which contract the shareholder, subject to conditions allowed by law, undertakes to pay regular instalments of dues

until the sum of the dues so paid, plus his apportioned share of the profits earned, shall equal the declared matured value of the stock, when it is paid off and the relation automatically ceases. On the other hand, shareholders of an ordinary business corporation remain such until they dispose of the stock or the corporation is dissolved. The provision of the Building & Loan Code of May 5, 1933, P. L. 457, sec. 607, that an association shall not be required to issue a share certificate to any holder of an instalment share was only declaratory, and by way of recognition, of the prior common practice among building and loan associations.

If a certificate of stock had been issued to Tye, and the Uniform Stock Transfer Act of 1911 applied, under section 13 this appellant could not have secured a valid attachment unless the certificate had been actually seized by the officer making the attachment or surrendered by the corporation which issued it or its transfer by the holder enjoined, none of which was done. It now asks that the failure to issue a stock certificate to Tye shall be fatal to his right to transfer his interest in the shares but shall not affect its right to attach that interest. We will not so hold.

The assignments of error are overruled and the judgment is affirmed.