## Clardy *v.* Barco Construction Company, Inc. (et al., Appellant).

Argued December 16, 1964. Before ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

*Morton Craine,* for appellant.

*Douglas D. Royal,* with him *Robert E. Porter,* and *Greenwell, Porter, Smaltz & Royal,* for appellee.

OPINION BY MONTGOMERY, J., March 18, 1965:

This appeal by Bell Savings and Loan Association (Bell), the garnishee in an attachment execution on a judgment recovered by George H. Clardy (Clardy) against Barco Construction Company, Inc. (Barco), is from a judgment in favor of Clardy entered against it in a nonjury trial. The money sought to be attached in the hands of Bell was the balance of a fund originally comprising a construction loan (mortgage fund) which it had made under a construction loan agreement to Barney Goldman, the owner of a tract of land in Radnor Township, Delaware County, for the purpose of improving it with residential units, paved streets, etc., and additional money advanced by Goldman (primary fund) for the same purpose. Barco was the general contractor for Goldman and Clardy was a subcontractor.

This judgment was rendered on the theory that Barco was a third party beneficiary of the contract between Bell and Goldman, thereby making its interest subject to attachment by its creditors; and that Bell is equitably estopped from denying that liability. Bell contends that Barco was not a beneficiary of the contract; that it (Bell) had the sole discretion in the disbursement of the funds; that it was not liable to any-

one except Goldman, the owner; and that it is not estopped from denying liability to Clardy or Barco. The balance remaining in its hands at the time of the attachment was subsequently credited on the loan when the mortgage was satisfied. Thus it can be said to have been returned to Goldman.

Our principal consideration is whether Barco or Clardy may be considered as beneficiaries of the contract between Bell and Goldman. The facts relating to the contracts are not in dispute. On September 28, 1960, Goldman entered into two contracts. One was with Barco to erect eight buildings and make road and street improvements on the land owned by Goldman. The other was with Bell for the construction loan. Barco was also a signatory to the construction loan agreement, which stated that its main purpose was to pay for the improvements in the amount of $127,184.72 "in accordance with a bid heretofore submitted by BARCO CONSTRUCTION COMPANY, INC., hereinafter called 'contractor'. . . ."

It is appellant's contention that this case is ruled by *Demharter v. First Federal Savings & Loan Association of Pittsburgh,* 412 Pa. 142, 153, 194 A. 2d 214, 219 (1963), which held, "Nothing in this Agreement *obligated* First Federal to make any payment to any 'subcontractors' or 'materialmen', whether they be in the status of third party beneficiaries or not. If, *and only if,* First Federal elected to do so would any payment be made. This Agreement contains no actionable promise to the suppliers of labor and materials which can be enforced by them."

The provisions of the Demharter contract on which that decision was based are identical with the provisions of the contract we are now considering.[1]

---

[1] "Now, THEREFORE, it is mutually agreed between the parties hereto that the Association *shall*:

. . .

We note, however, that *Demharter* is limited to subcontractors and materialmen and does not decide whether the general contractor has any rights under the contract as a third party beneficiary or otherwise. The effect of the ruling is, that the election to pay either the contractor or the subcontractors and materialmen was entirely that of the lender, and since it elected to pay the contractor, the subcontractors and materialmen had no right to complain. Although, in that case, Keystone was both owner and contractor, the decision acknowledged the right of First Federal to recognize it in either capacity.

Therefore, the question in our present case is different from the question in *Demharter*. Here we are

---

"6. Pay out of the funds to contractors, subcontractors or materialmen, as the Association may elect, for work performed, services rendered, and materials furnished in and about the construction of the building. Such payments shall be made at such times and in whatever amounts the Association may deem expedient, and shall be made according to requisitions approved by a building inspector designated by the Association, which requisition shall be in such form and shall contain such information as the Association may require; it being the intention of the parties hereto that the Association shall be free to make the payments heretofore mentioned in such manner that the Association's security shall at all times be protected."

"It is expressly understood and agreed, any provisions in this agreement to the contrary notwithstanding:

"(G) That the Association shall assume no liability whatsoever to the Owner, his contractors, sub-contractors and materialmen, or others, except for its malfeasance in the application of the said funds for the purposes hereinbefore recited and shall be fully protected in making any payment upon the faith of any requisition, inspector's certificate or release of lien or other instrument, believed by it to be genuine and to have been duly executed by the proper parties, and the Owner does hereby release and discharge the Association of and from any such liability and hereby further agrees to indemnify and save harmless the said Association of and from any and all liability, damages, costs and expenses which it may sustain by reason of its application of said funds in good faith for the purposes hereinbefore set forth."

concerned with the rights of Barco since Clardy is attempting by attachment to succeed to its rights as by an assignment of them and not on any rights he may have had against Bell directly. The general rule is that the plaintiff in such proceedings is not to be placed in any better position than the garnishee or in any worse position than he would be if defendant himself were enforcing his claim. *Cameron v. Berger,* 132 Pa. Superior Ct. 484, 1 A. 2d 529 (1938); *Guarantee Trust and Safe Deposit Company of Mount Carmel v. Tye,* 129 Pa. Superior Ct. 481, 196 A. 618 (1938).

We conclude that Barco was a third party beneficiary of the contract between Bell and Goldman. Barco was named therein as the contractor who was to do the work, payment for which the loan was being made. It also was a signatory of the contract. Determination of whether the third party is in fact a creditor beneficiary depends on the intention of the parties to the contract as expressed therein. *Burke v. North Huntingdon Township,* 390 Pa. 588, 136 A. 2d 310 (1957); *Kreimer v. Second Federal Savings and Loan Association of Pittsburgh,* 196 Pa. Superior Ct. 644, 176 A. 2d 132 (1961). We find that intention clearly expressed in the agreements and by the conduct of the parties in executing them. This obligation to the contractor was subject, however, to the lender's right to pay subcontractors and materialmen directly, which right was not exercised by it.

Bell recognized the beneficiary status of Barco by paying the proceeds of the loan directly to it and to the subcontractors and materialmen designated by Barco by a system of vouchers utilized during the progress of the work, without the approval of Goldman and without remitting the payments through Goldman. Goldman also recognized this status of Barco in their

contract.[2] Furthermore, it was provided in the contract between Bell and Goldman that only after full payment was made for the improvements was Goldman entitled to any return of money by way of credit on his mortgage.[3] *Smith Evans Lumber Company v. Citizens Federal Savings & Loan Association*, 95 Ga. App. 468, 98 S.E. 2d 102 (1957), relied on by appellant, is readily distinguishable. Therein, contractors, subcontractors and materialmen had no claim to the proceeds of the loan until the owner authorized payment of their claim. Such a condition is not present in the instant case. Barco's rights were established by the contracts subject to Bell's election to pay either the contractor or subcontractors and materialmen.

Appellant raises two additional questions which must be considered. It asserts the right of the contracting parties to cancel a creditor beneficiary contract, citing Restatement, Contracts §143 (1932).[4]

[2] "It is further understood between the parties hereto that the Association has funds or security in its possession in the total amount of One Hundred Twenty Six Thousand Four Hundred and 00 Cents Dollars ($126,400.00), which shall be held by the Association and applied to the contract price above set forth, which sum shall be paid by the Association directly to those furnishing labor and/or materials, as the case may be, in accordance with a table of payments which shall be filed with the Association by the Contractor, based substantially on the following schedule: . . ."

[3] "Upon completion of the building and as a condition precedent to making final payment to the contractor, require the contractor to deliver to Association a full and complete release of liens duly executed by the contractor and all sub-contractors and materialmen.

"Upon completion of the building, render a statement to the Owner showing all expenses and disbursements from the funds. *Should any balance remain in said funds the same shall be applied as a credit on the principal of the mortgage.*" (Emphasis supplied)

[4] "A discharge of the promisor by the promisee in a contract or a variation thereof by them is effective against a creditor beneficiary if,

There is no merit in this contention. The rule precludes the contracting parties from rescinding or altering the contract after the creditor beneficiary has materially changed his position in reliance thereon. Barco, in reliance on the rights given to it by the contract between Bell and Goldman, completed the work.

The second question is whether it was necessary for Barco to sue Bell before Clardy could attach its claim against Bell. This contention must also be rejected. Barco, by approving the voucher for payment to Clardy, after Clardy's work had been approved by the township engineer, qualified the claim for payment by Bell either to Barco or to Clardy at Bell's election. Since Bell had money in its possession from which payment could be made to Barco at the time it was served with the attachment and after it had refused to pay Clardy directly, it was liable to Barco and, through it, as garnishee, to Clardy. It was not necessary for Barco to take legal action against Bell before its chose in action was subject to attachment. *Charles A. Klinges, Inc. v. Camblos Construction Corp.*, 194 Pa. Superior Ct. 585, 168 A. 2d 916 (1961).

In the light of our foregoing discussion we determine it unnecessary to consider this case on the basis of any promises made by Bell directly to Clardy, which involves the theory of estoppel asserted by appellee; nor do we think it necessary to discuss the subject of fraud other than to say that there was some evidence from which collusion or fraud might be inferred. By paying Goldman the balance in its hands with knowledge at that time that Barco or Clardy were unpaid for work satisfactorily completed which had improved the security it held for its loan to Goldman and, while

"(a) the creditor beneficiary does not bring suit upon the promise or otherwise materially change his position in reliance thereon before he knows of the discharge or variation, and

"(b) the promisee's action is not a fraud on creditors."

having in its possession an approved voucher from Barco and a certificate of approval from the township, Bell cannot be said to have acted with clean hands in the matter.

There remains the question of interest. The lower court allowed interest from the date of service of the attachment. This is consistent with the rights of Clardy against Barco. His judgment continued to bear interest after the writ of execution was issued. Since Bell held sufficient money in its possession belonging to Barco, it had no cause to complain. The effect of a judgment against a garnishee is to state that on the day it is entered the garnishee is indebted to the defendant for the amount stated therein. Under Pa. R. C. P. 1276 this shall be the amount of plaintiff's judgment against the defendant plus interest and costs. This, of course, may not exceed the amount the garnishee owes the defendant. The interest was properly added to the amount for which the attachment was issued from the day it was issued.

Finally, we are of the opinion that clause (G) of Bell's contract with Goldman is not applicable to the present situation. It applies to situations where Bell relies on certificates, releases, etc., which it believes to be genuine. The position it takes in the present case is that under its contract with Goldman it may disburse the proceeds of the construction loan in any manner it may elect and is responsible only to Goldman. We do not believe that is the effect of its agreement, as we have heretofore indicated.

Judgment affirmed.