639 A.2d 474

JEFFERSON BANK

v.

J. ROY MORRIS AND SCANFORMS, INC.

Appeal of SCANFORMS, INC.

Superior Court of Pennsylvania.

Argued Dec. 16, 1993.

Filed March 24, 1994.

548

Neil E. Jokelson, Philadelphia, for appellant.

Barry N. Sklar, Jenkintown, for Jefferson Bank, appellee.

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order entered March 4, 1993, directing appellant/garnishee, Scanforms, Inc. (hereinafter 'garnishee'), to pay several sums due judgment debtor, J. Roy Morris, to appellee/garnishor, Jefferson Bank (hereinafter 'garnishor'). Garnishee, presents the following issues for our review:

1. Whether Appellant/Garnishee can raise the issue of exemption or immunity of property from execution at the assessment of damages hearing under Pa.R.Civ.P. 3146(a) in light of Pa.R.Civ.P. 3142(c) which provides that exemption or immunity of property from execution may be raised at any time.

2. Whether fees due to the defendant/judgment debtor from garnishee under the consulting contract in the instant case constitute wages "in the hand[s] of the employer" under 42 Pa.C.S.A. § 8127.

3. Whether garnishee/appellant had a complete set off against defendant under the consulting agreement which limits defendant/judgment debtor's exclusive remedy to having fees otherwise due him to be applied as an offset to the promissory note he owed garnishee/appellant.

Garnishee's Brief at 5. For the following reasons, we reverse.

On January 11, 1991, judgment debtor, J. Roy Morris [1] and garnishee, Scanforms, Inc., entered into two written agreements. The first agreement, Exhibit G–1 (hereinafter "G–1"), was entered into in settlement of a lawsuit which involved Morris, garnishee, and several other parties. G–1 provided, in part, for issuance of a note payable from Morris to garnishee. Additionally, pursuant to G–1, garnishee and Morris entered into a consulting agreement (Exhibit G–2).

Under G–1, Morris executed a note to garnishee for $219,-738.00, payable in 48 monthly installments from October 31, 1992 through 1996. The agreement provided that Morris would have a thirty (30) day grace period to pay any amount of principal or interest due before default could be declared.[2] In the event of Morris' default on the note, any payments due Morris under the consulting agreement, would be automatically assigned to and applied in payment of the principal and interest then due and unpaid under G–1. The consulting agreement also provided that default would terminate any obligation of garnishee to provide benefits and payments to Morris, effective on the date of such default.[3]

1. Mr. Morris is not a party to this appeal.

2. The grace period was to be calculated from the date payment was due, if notice of failure to pay was given within fifteen (15) days of the due date. If notice was sent more than fifteen (15) days after payment was due, then the grace period would be calculated from the date that notice was sent. The agreement also stipulated that there could be no successive grace periods.

3. Additionally, G–1 stated that subsequent curing of the default would not serve to reinstate any of the entitlements or benefits to Morris.

Under the consulting agreement, garnishee agreed to pay Morris $35,000.00 a year for five years, with payments applying retroactively from October 1, 1990. The payments were to be made from January 16, 1991, in monthly installments of $2,916.67. The default provision provided that if garnishee failed to make payments for two consecutive months, Morris' only remedy would be to require garnishee to apply the due payments to the satisfaction of the note payable to garnishee, under G-1. The consulting agreement provided that Morris had to give garnishee notice of breach of the agreement and a period of fifteen (15) days in which to cure the breach. Through October 4, 1991, garnishee paid Morris his regular monthly fee pursuant to the consulting agreement.

Morris had also made a note payable to garnishor, Jefferson Bank.[4] On October 9, 1991, garnishor filed a complaint for confession of judgment against Morris for accelerated payment of the note, following Morris' default in March of 1991. On the same day, judgment in the amount of $339,094.81 was entered.

In an attempt to collect the sums paid to Morris under the consulting agreement, garnishor served garnishee with a writ of garnishment and interrogatories on October 22, 1991.[5] Subsequently, judgment for failure to answer interrogatories was entered against garnishee on August 24, 1992. On October 28, 1992, garnishor filed a petition for assessment of damages hearing, pursuant to Pa.R.Civ.P. 3146.

4. Garnishor Jefferson Bank was not a party to the action involving garnishee Scanforms, Inc. and judgment debtor Morris. In addition, this note was not issued pursuant to either G-1 or the consulting agreement.

5. Thereafter, garnishee stopped making payments to Morris. On October 7, 1992, days before Morris' first payments to garnishee, under G-1, were scheduled to become due, garnishee notified Morris that all past due and future consulting fees, under G-2, would be applied against the note executed on garnishee's behalf. Garnishee received no response from Morris. No notice of default was sent by Morris under the consulting agreement or by garnishee under G-1 until January 6, 1993, when garnishee sent a letter informing Morris of the writ of execution in attachment against his fees.

Following the hearing, on January 19, 1993, briefs were filed by the parties. On March 4, 1993, the trial court found in favor of garnishor and against garnishee in the amount of $46,466.72, representing 16 monthly payments due to Morris from garnishee between October 22, 1991 and the date of the trial court's order, in addition to any legal interest. The court also ordered garnishee to pay to garnishor all future monthly sums due Morris, until January 1, 1996. This timely appeal followed.

In it's first two issues, garnishee contends that the trial court erred in determining that it was precluded from raising the defense of exemption of wages in the hands of an employer from execution. Specifically, garnishee asserts that Pa. R.Civ.P. 3142(c) provides that the defense of exemption or immunity of property from execution may be raised for the first time at an assessment of damages hearing. We disagree.[6]

 Following service of writ of garnishment, a garnishee may defend an action on behalf of the judgment debtor by raising the defense of exemption of wages from attachment. Pa.R.Civ.P. 3142. Once default judgment has been entered, the rights of the judgment debtor are assigned to garnishor.[7]

6. Garnishee also asserts that it received notice of the assessment of damages hearing eight days before the hearing and was subsequently precluded from raising the issue of exemption. We note that the requirement that notice of defenses be received by all parties ten days before the hearing is impliedly contingent upon the garnishee's receiving timely notice of the assessment hearing. *See, e.g., Franklin Interior, Inc. v. Browns Lane, Inc.,* 227 Pa.Super. 252, 319 A.2d 682 (1974). Notice is deemed to occur on the date of actual receipt, not on the date that it was sent. *Id.* Although there is a presumption that a party receives notice within the due course of mail, it is "rebuttable and the [aggrieved party] may offer evidence in support ... to show that notice was not received." *Id.* In the instant case, the trial court did not allow the defense because it was inapplicable, not because garnishee failed to give timely notice of its defenses to garnishor.

7. The intent behind the Pennsylvania Rules of Civil Procedure is that each rule be construed with reference to the rules of civil procedure as a whole, in order to avoid a result that is absurd, impossible or unreasonable. Pa.R.Civ.P. 128(a), (b). *Cf. Wilson v. Central Penn Indus. Inc.,* 306 Pa.Super. 146, 452 A.2d 257 (1982) (in determining legislative intent, sections of a statute must be read together and

The garnishee may then resist attachment only by raising defenses which would be valid against judgment debtor. *Ramins v. Chemical Decontamination Corp.,* 126 Pa.Cmwlth. 559, 560 A.2d 836 (1989) *alloc. denied* (a garnishee may raise *its* own defense of immunity or exemption of property at the assessment of damages hearing).

■ 42 Pa.C.S. § 8127(a) provides that "[t]he wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding for support or for board for four weeks or less." 42 Pa.C.S. § 8127(a). In applying 42 Pa.C.S. § 8127(a), to an assessment of damages hearing, the court must first determine whether the exemption of wages from attachment is a defense which the garnishee may raise against the judgment debtor. *See* Pa.R.Civ.P. 3146. Where the garnishee may raise such a defense against the judgment debtor, the court must consider whether (1) the sums in the hands of the garnishee constitute monies exempt from attachment; and (2) the garnishee is an employer of the judgment debtor. *See Eastern Lithographing Corp. v. Neville,* 203 Pa.Super. 21, 24, 198 A.2d 391, 393 (1964).

■ The defense of exemption of wages is designed to protect the wage earner. *Id.* ("The obvious purpose of the act is to protect earnings"). *See also Hild Floor Mach. Co. v. Rudolph,* 156 Pa.Super. 102, 39 A.2d 457 (1944). As the purpose of the wage exemption defense is to protect the judgment debtor from garnishment of his wages, it may not be raised by garnishee against judgment debtor. Accordingly, garnishee is precluded from raising the defense of exemption of wages following entry of default judgment. *Id.* at 104, 39

construed with reference to the entire statute). To this end, where two rules arguably cover the same matter and appear to be inconsistent, the specific rule will prevail over the more general. Pa.R.Civ.P. 132. *Cf. Williams v. State Farm Mut. Auto. Ins. Co.,* 763 F.Supp. 121 (E.D.Pa. 1991) (a specific provision of a statute prevails over an inconsistent general provision, which appears to cover the same matter). As the more specific provision, Pa.R.Civ.P. 3146 controls procedure following entry of default judgment and the garnishee's ability to raise any defenses, including exemption of property, is restricted to the limitations imposed therein.

A.2d at 458 (defense of exemption of wages may be stricken even when made by judgment debtor following entry of judgment for judgment creditor). *See also Ramins v. Chemical Decontamination Corp.*, 126 Pa.Cmwlth. 559, 560 A.2d 836 (1989) (default judgment barred where defense of immunity or exemption of property raised, by untimely preliminary objections and answers to interrogatories with new matter but before judgment creditor filed a praecipe for entry of default judgment).

Garnishee also contends that the trial court erred in denying garnishee's contractual right to set-off wages due to judgment debtor against the note made by judgment debtor to garnishee. Essentially, garnishee contends that under the consulting agreement, judgment debtor's, and consequently garnishor's, sole remedy for garnishee's failure to pay wages is set-off against the outstanding note to garnishee. We agree.[8]

A garnishor's rights are derivative from those of his debtor's and cannot exceed the debtor's rights. *First Pa. Banking and Trust Co. v. Liberati*, 282 Pa.Super. 198, 204, 422 A.2d 1074, 1077 (1980) (citations omitted). *See also Clardy v. Barco Constr. Co.*, 205 Pa.Super. 218, 223, 208 A.2d 793, 795 (1965) ("the general rule is that the plaintiff in such proceedings is not to be placed in any better position than the garnishee or in any worse position than he would be if defendant himself were enforcing his claims") (citations omitted). "[I]n the absence of fraud, [a garnishor] can claim no greater right than was vested in the [debtor] at the time the writ was served on the garnishee". *First Pa. Banking and Trust Co., supra.* The service of writ of garnishment does not alter any contractual relations existing between garnishee and judgment debtor. 38 C.J.S. *Garnishment* § 179 (1943). Once a debtor has lost his rights to property and could not maintain

8. Generally, "[a] valid set off must be of a debt or demand due at the time of the commencement of the [garnishment] action in which it is interposed. If the claim is not then ripe for action it cannot be set off." *Almi, Inc. v. Dick Corp.*, 31 Pa.Cmwlth. 26, 35, 375 A.2d 1343, 1348 (1977). In the instant case, however, garnishee is asserting set-off as a contractually provided remedy, following its failure to pay wages.

an action to recover the property his creditor's claim for attachment will also fail. *First Pa. Banking and Trust Co.*, at 205, 422 A.2d at 1077.

In the instant case, judgment debtor could not have instituted a successful action against garnishee. to recover wages under the consulting agreement.[9] The consulting agreement required garnishee to. pay wages to judgment debtor or to set-off payments due, against the note made to garnishee. Any action brought by judgment debtor to collect wages, would only. result in the remedy of set-off. As the consulting agreement precluded judgment debtor from recovering wages from garnishee in any legal proceeding, garnishor cannot successfully attach the wages. Accordingly, we reverse the order of the trial court.

Order reversed.

---

9. Garnishor does not raise any claim of fraud and is therefore not entitled to greater rights than had vested in the debtor at the time writ of garnishment was served.