**Gertrude R. SEVAST, Appellant,**

v.

**James KAKOURAS, Gail Sunday, James Sunday and Glenn Gubich, Appellees.**

Superior Court of Pennsylvania.

Argued June 25, 2003.

Filed Dec. 26, 2003.

Reargument Denied March 4, 2004.

---

Daniel H. Shertzer, Lancaster, for appellant.

David K. McCarthy, Allentown, for Sunday and Gubich, appellees.

BEFORE: JOYCE, BENDER and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 Appellant, Gertrude Sevast, appeals from the order dismissing her motion for summary judgment and granting summary judgment in favor of Appellees, Gail Sunday, James Sunday, and Glen Gubich ("Garnishees"). We reverse.

¶ 2 The trial court succinctly summarized a portion of the procedural history as follows:

In 1992 [Appellant] obtained a judgment against ... James Kakouras ... in Lancaster County pursuant to the applicable provisions of the Pennsylvania Workers' Compensation Act. Later, that judgment was modified to $161,628.24, based upon further Workers' Compensation proceedings. Since [Appellant] apparently cannot enforce that judgment against Kakouras, she instituted garnishment proceedings against the Garnishees in the Lehigh County Court of Common Pleas.

Trial Court Opinion, 12/31/02, at 2.

¶ 3 In 1985, prior to the initiation of this action, Mr. Kakouras was assigned the buyer's interest in a long-term real estate sales agreement. The agreement provided that the buyer pay Stanley C. Sunday $365,000 over 240 months at 12% interest, including a $50,000 down payment for property located in Manor Township, Lancaster County, Pennsylvania. After receiving several payments from Mr. Ka-

kouras, the seller died on March 7, 1994. On November 4, 1994, Mr. Sunday's executrix conveyed the title to the real estate to Garnishees and assigned the agreement to them. Until his eventual default in August 1995, Mr. Kakouras and his predecessor had paid $121,178.15 toward the purchase price.

¶ 4 Upon default, Garnishees elected to terminate the agreement and recover possession of the property. They filed an action in ejectment in the Court of Common Pleas of Lancaster County. While the action was pending, Mr. Kakouras filed a bankruptcy petition listing Appellant as a creditor with a disputed claim of $60,000. On October 29, 1996, the bankruptcy court granted Garnishees relief from the automatic stay of state court proceedings so the ejectment action could proceed. On January 27, 1997, the common pleas court entered an order that terminated the real estate sales agreement and granted Garnishees possession of the premises. Thereafter, on April 10, 1997, Garnishees sold the real estate for $400,000, recouping a net sum of $364,863.10.

¶ 5 On February 7, 2001, Appellant initiated this action against Garnishees for $121,178.15,[1] the value of Mr. Kakouras's putative restitution claim against Garnishees under the Restatement (Second) of Contracts § 374. *See Lancellotti v. Thomas*, 341 Pa.Super. 1, 491 A.2d 117 (1985) (breaching party is entitled to restitution for excess performance). On September 3, 2002, Garnishees moved for summary judgment. Thereafter, Appellant filed a cross-motion for summary judgment. On December 31, 2002, the trial court entered summary judgment in favor of Garnishees

---

1. Technically, Appellant's writ of execution and attachment demanded all debts due to her. However, the amount of restitution due

to Mr. Kakouras is $121,178.15, the principal paid on the real estate sales agreement.

and against Appellant, effectively terminating Appellant's action. This appeal followed.

¶ 6 We review a trial court's grant or denial of summary judgment for an abuse of discretion or error of law. *Pappas v. Asbel,* 564 Pa. 407, 768 A.2d 1089 (2001). Our scope of review of the trial court's order granting summary judgment is plenary. *Lewis v. Philadelphia Newspapers, Inc.,* 2003 PA Super 350, 833 A.2d 185. In making our determination, we view the record in the light most favorable to the non-moving party. *K–B Building Co. v. Sheesley Construction, Inc.,* 2003 PA Super 372, 833 A.2d 1132.

¶ 7 According to the trial court, Mr. Kakouras's putative restitution claim was not subject to garnishment because it was unliquidated and uncertain. *See Brown v. Candelora,* 708 A.2d 104 (Pa.Super.1998), *appeal granted,* 555 Pa. 478, 725 A.2d 176 (1999) (conditional, unliquidated claim for breach of contract is not subject to attachment). In support of its conclusion, the trial court noted that Garnishees possessed potential defenses to the putative restitution claim based upon three prior adjudications concerning Mr. Kakouras's rights under the agreement. Hence, the trial court concluded that the claim Appellant sought to attach was not properly attachable under Pennsylvania jurisprudence and that Garnishees were entitled to judgment as a matter of law. We disagree, and for the following reasons, we find that the trial court erred in granting summary judgment in favor of Garnishees.

¶ 8 In *Brown,* this Court adopted the principle that certain unliquidated debts which are dependent upon a contingency are not properly attachable in garnishment proceedings. In that case, we held that a judgment debtor's bad-faith claim against his insurer was not subject to garnishment because the insurer's debt was conditional

and uncertain. We reasoned that "[a]n unliquidated claim for breach of contract is not a debt owed or property and such a claim may not be attached as if it were the debtor's property in the garnishee's hands." *Brown,* 708 A.2d at 108 (quoting *In Re J. Robert Pierson, Inc.,* 44 B.R. 556, 559 (E.D.Pa.1984)) (internal quotations omitted). Thus, we held that garnishment was not available to the judgment plaintiff.

 ¶ 9 At the outset, we observe that the trial court erred in characterizing the debt as unliquidated under *Brown,* since the amount of the restitution claim is calculable. In *J. Purdy Cope Hotels Co. v. Fidelity–Phenix Fire Ins. Co.,* 126 Pa.Super. 260, 191 A. 636, 640 n. 2 (1937), this Court adopted the definition of an unliquidated claim as articulated by Professor Samuel Williston. "An unliquidated claim is one, the amount of which has not been fixed by agreement or cannot be determined by the application of rules of arithmetic or law." 3 WILLISTON ON CONTRACTS § 7:34 (4th ed.). Instantly, the amount of the claim is stipulated by the parties. Mr. Kakouras had paid $121,178.15 in principal toward the $350,000 contract price. Upon resale, Garnishees received an additional net sum of $364,863.10. Thus, the $121,178.15 restitution claim for the value of Mr. Kakouras's part-performance easily is determined by the rules of arithmetic. Consequently, the trial court erred in concluding that the claim was unliquidated.

 ¶ 10 Next, we must determine whether Appellant's putative restitution claim is conditional or property subject to attachment. Garnishment provides a remedy for a judgment creditor to collect a debt from assets of his debtor that are in the hands of a third party. *Brown, supra.* For the purposes of Pa.R.C.P. 3101, a garnishee is deemed to possess a debtor's property if he, *inter alia,* "owes a debt to the [person]" against whom a judgment

has been entered. *See* Pa.R.C.P. 3101(b). A judgment creditor essentially stands in the shoes of his debtor with regard to the debt owed by the garnishee. *See Clardy v. Barco Construction Co.*, 205 Pa.Super. 218, 208 A.2d 793 (1965) (plaintiff is placed in identical position in relation to garnishee as if defendant debtor himself were enforcing claim); 13 Standard Pennsylvania Practice 2d § 77:3 at 333 ("A garnishor's rights are derivative from those of the debtor's and cannot exceed the debtor's rights."). Consequently, however, a garnishee may raise any defenses against a judgment creditor that it has against the judgment debtor. *See* Pa.R.C.P. 3145(b)(2); *Jefferson Bank v. Morris*, 432 Pa.Super. 546, 639 A.2d 474 (1994). Applying these principles to the case at bar, we find that the restitution claim is attachable.

¶ 11 We briefly review the legal principles supporting the putative restitution claim. Restitution is a principle of quasi-contract designed to effect fairness and equity where a benefit has been unjustly conferred. JOHN EDWARD MURRAY, JR., MURRAY ON CONTRACTS, § 19 at 35 (3d ed.1990). "The purpose of quasi-contracts is to accomplish restitution, *i.e.,* to place the parties in a status quo as if no unjust enrichment had occurred." *Id.* The law abhors a forfeiture, and even a defaulting plaintiff may recover restitution damages for the benefit conferred by his part-performance. JOHN EDWARD MURRAY, JR., *supra*, § 126 at 721. The Restatement (Second) of Contracts § 374 provides for restitution in favor of a breaching party as follows:

(1) Subject to the rule stated in Subsection (2) [regarding assent to perform as liquidated damages for breach], if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

Hence, the rule affords a breaching party restitution to the extent that he can establish that the value of his part-performance exceeds the loss suffered by the non-breaching party.

¶ 12 The illustration accompanying section 374 is particularly instructive to the case at bar.

1. A contracts to sell land to B for $100,000, which B promises to pay in $10,000 installments before transfer of title. After B has paid $30,000 he fails to pay the remaining installments and A sells the land to another buyer for $95,000. B can recover $30,000 from A in restitution less $5,000 damages for B's breach of contract, or $25,000. If A does not sell the land to another buyer and obtains a decree of specific performance against B, B has no right to restitution.

RESTATEMENT (SECOND) OF CONTRACTS § 374 cmt. a, illus. 1 (1979). The case *sub judice* parallels this illustration. Instantly, the installment contract was for $365,000. After $121,178.75 had been paid toward the principal, Mr. Kakouras breached the contract. Garnishees sold the land to another buyer for $400,000 receiving a net recovery of $364,863.10 following fees, liens, expenses and insurance proceeds. Thus, under section 374, Mr. Kakouras can recover restitution from Garnishee for his part-performance.

¶ 13 In *Lancellotti, supra,* this Court adopted section 374 stating, "[r]ules of contract law are not rules of punishment; the contract breaker is not an outlaw. The party who committed a breach should be entitled to recover any benefit in excess of

the loss that he has caused by his own breach." *Id.* at 122 (internal quotations and citations omitted). Garnishees do not contest the application of section 374 under *Lancellotti.* Instead, they submit that the underlying restitution claim is conditional because potential affirmative defenses exist that would preclude Appellant's right to bring the claim.

¶ 14 Garnishees' motion for summary judgment did not level any defenses to the attachment claim. However, their supporting brief raised two possible defenses to the putative restitution claim: 1) the claim is barred by the applicable statute of limitations; and 2) Mr. Kakouras is collaterally estopped from raising the issue because a series of court orders terminated his rights to the agreement. The trial court agreed that the previous orders provided possible defenses to attachment and relied upon them as grounds to dismiss the garnishment action. We disagree with the trial court's conclusion.

 ¶ 15 Appellant claims that the potential affirmative defenses that Garnishees attempt to invoke are waived because they were not raised in the pleadings pursuant to Pa.R.C.P. 3145. Accordingly, Appellant asserts that they do not preclude her garnishment action.

¶ 16 Rule 3145(b)(2) outlines the manner in which defenses to a garnishment action can be raised. The rule provides, in pertinent part, as follows:

(b) The garnishee in the answer under "new matter" **may** include

(1) the defenses of the immunity or exemption of property;

(2) any defense or counterclaim which the garnishee could assert against the defendant if sued by the defendant but the garnishee may not assert any defense on behalf of the defendant against

the plaintiff or otherwise attack the validity of the attachment;

Pa.R.C.P. 3145 (emphasis added). The only pleadings in the case at bar are Appellant's interrogatories and Garnishees' answers thereto.

¶ 17 Pa.R.C.P. 1030, an equivalent provision that applies to actions in assumpsit, provides that an affirmative defense, including the statute of limitations, *res judicata,* or collateral estoppel **shall** be raised in new matter or it will be waived. *See Coldren v. Peterman,* 763 A.2d 905, 909 (Pa.Super.2000) (Pursuant to Rule 1030, "[a]ffirmative defenses are compulsory and therefore must be timely pled [in new matter] or they are forever lost."). Mindful that garnishment procedures, as provided by Pa.R.C.P. 3154(a), "shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in assumpsit," Appellant asserts that the defenses are waived as a result of Garnishees' failure to raise them as new matter in the answer to her interrogatories.

 ¶ 18 Although Rule 3154 could be construed as requiring that defenses be raised as new matter, it likewise could be construed as merely permitting defenses to be raised at this stage in the proceedings. We note that while Rule 1030 is mandatory, the language in Rule 3145 is permissive. That is, "the answer under "new matter" **may** include . . . any defense or counter claim which the garnishee could assert against the defendant . . . ." This Court consistently has interpreted the word "may" permissively when it is used in this manner. "While the word 'shall' might, in a proper setting, be interpreted as permissive, the word 'may' can never be given the imperative meaning." *Commonwealth v. Baraniak,* 350 Pa.Super. 459, 504 A.2d 931, 933 (1986) (quoting *Weiner v. Hospital Service Plan of Lehigh Valley,*

187 Pa.Super. 244, 144 A.2d 575, 577 (1958)). *Compare Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A.2d 737 (1942) (where statute directs doing a thing for the sake of justice, "may" means same as "shall"). Hence, in light of the uncertainty of the language employed in Rule 3145, we opt to find that Garnishees defenses are not waived.

¶ 19 Nonetheless, the trial court erred in holding that the previous court orders rendered the restitution claim unenforceable. Indeed, the trial court's rationale ignores the settled principles of estoppel. The court reasoned as follows:

There are many contingencies ... which prohibit considering Garnishees [sic] "debt" as being certain and payable. In fact, three separate judicial actions, two in Lancaster County and one in bankruptcy court, have cast considerable doubt, at least, on any claim Kakouras might have had against Garnishees. On October 29, 1996, the Honorable Thomas M. Twardowski issued an order in the United States Bankruptcy Court for the Eastern District of Pennsylvania at Docket No. 96–22872 which found that Kakouras "does not have any right, title or interest in [the real estate subject to the long-term Agreement of Sale] for the same ...". [sic] On January 27, 1997, the Honorable Lawrence F. Stengel, of the Court of Common Pleas of Lancaster County, ordered that Kakouras' [sic] rights under the Agreement of Sale shall be terminated. Lastly, in a Memorandum Opinion dated November 20, 2000, the Honorable Louis J. Farina, also of the Court of Common Pleas of Lancaster County, at No. C1–00–01276, in considering the effect of Judge Stengel's order, opined that "as such interest [in the Agreement] was extinguished, there was nothing to revive the judgment against."

Trial Court Opinion, 12/31/02, at 4–5. Therefore, without identifying the specific theory of estoppel it relied upon, the trial court concluded that the three above-referenced court orders rendered the restitution claim unenforceable.

¶ 20 Garnishees essentially adopted the trial court's position, however, they specifically invoke the doctrine of collateral estoppel. Accordingly, Garnishees assert that Appellant was precluded from relitigating the issue of restitution because that issue was resolved against her during the initial ejectment action and confirmed in the companion orders entered in bankruptcy court and the court of common pleas.

¶ 21 Collateral estoppel precludes relitigation of issues only if the following elements are satisfied: (1) the issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Columbia Medical Group, Inc. v. Herring & Roll, P.C.,* 829 A.2d 1184 (Pa.Super.2003).

¶ 22 Instantly, Garnishees have failed to demonstrate that the issue decided in the previous actions is identical to the issue raised in this proceeding. The issue presented in the previous actions clearly concerned Mr. Kakouras's interest in the property and his rights vis-à-vis the terminated sales agreement. *See In re Kakouras,* No. 96–22872 (United States Bankruptcy Court for the Eastern District of Pennsylvania, October 29, 1996) (bankruptcy court terminated Kakouras's right, title, and interest in the property and agreement of sale and granted relief from

stay so Garnishees could continue state court ejectment action); *Sunday v. Kakouras,* No. 96–3798 (Court of Common Pleas of Lancaster County, January 27, 1997) (ejectment action wherein court terminated Kakouras's rights · under the agreement and granted immediate possession to Garnishees); *Sevast v. R.A. Stonerook,* No. CI–00–01276 (Court of Common Pleas of Lancaster County, November 20, 2000) (court acknowledged that Kakouras's interest in agreement was extinguished and held that Appellant cannot revive judgment lien on property since Kakouras no longer has interest in property). However, that issue differs from the restitution issue raised in this action.

 ¶ 23 While the previous orders terminated Mr. Kakouras's possessory rights to the land and extinguished his contractual rights enumerated in the sales agreement, those orders did not affect his entitlement to restitution under *Lancellotti* because restitution is independent from the underlying contract. *See* JOHN EDWARD MURRAY, JR., *supra,* § 126 (although breaching plaintiff's contract rights may be terminated at breach, he may recover value of his part-performance to extent it exceeds damages caused by breach). Similarly, restitution could not have been asserted in the ejectment action because the right had not yet come to fruition. It did not arise until the proceeds from the resale exceeded the loss caused by Mr. Kakouras's breach. Hence, this estoppel claim is without merit.

 ¶ 24 Likewise, Appellant's restitution claim is not barred by the statute of limitations. As noted *supra,* a restitutionary action is based upon the principles of "a contract implied at law." JOHN EDWARD MURRAY, JR., *supra,* § 19. "Since

there is no true contract involved, the enforceable obligation [is] known as a 'contract implied in law' or 'quasi contract.'" *Id.* at 35. The statute of limitations for an action upon a contract implied in law is four years. 42 Pa.C.S. § 5525. "The Statute of limitations begins to run as soon as the **right** to institute and maintain a suit arises." *Weik v. Estate of Brown,* 794 A.2d 907, 909 (Pa.Super.2002) (emphasis added).

¶ 25 Garnishees posit that the statute of limitations began to run on September 1, 1995, the date on which Kakouras breached the agreement. This argument is contrary to reason. The right to restitution under section 374 arises only when the value of performance exceeds the loss caused by the breach. *See* RESTATEMENT (SECOND) OF CONTRACTS § 374 (1979). Thus, Mr. Kakouras had no right to restitution on the date of his default. In actuality, Appellant's restitution claim did not arise until April 10, 1997, the date on which Garnishees received the proceeds of the resale prompted by Mr. Kakouras's breach. Since Appellant initiated her claim on February 7, 2001, the claim was filed within the four-year statutory period. *See* 42 Pa.C.S. § 5525.

¶ 26 For all of the foregoing reasons, we reverse the trial court's order granting Garnishees' motion for summary judgment and dismissing Appellant's claim. Moreover, as the parties have stipulated to the relevant facts, there is no material dispute of fact, and absent a meritorious affirmative defense, Appellant is entitled to judgment as a matter of law. Accordingly, we direct the trial court to enter summary judgment in favor of Appellant and against Garnishees in the amount of $121,178.15.[2]

**2.** We recognize that the order denying Appellant's motion for summary judgment is interlocutory and cannot be appealed under Pa.

R.A.P. 341. However, the order granting summary judgment against Appellant is a final appealable order. Once a final order has

¶ 27 Order reversed. Matter remanded with instructions.

Jurisdiction relinquished.

been entered, we may entertain the merits of all interlocutory orders entered in the action.

*See Stephens v. Messick,* 799 A.2d 793 (Pa.Super.2002).