915 A.2d 1147

**Gertrude R. SEVAST**

v.

**James KAKOURAS.**

**Appeal of Gail Sunday, James Sunday and Glenn Gubich, Garnishees.**

**No. 180 MAP 2004.**

Supreme Court of Pennsylvania.

Argued April 13, 2005.

Decided Feb. 20, 2007.

46

Daniel Kevin McCarthy, Esq., Allentown, for Gail, et al Sunday.

Daniel H. Shertzer, Sr., Esq., Lancaster, for Gertrude R. Sevast.

James Kakouras, for James Kakouras.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

This case presents the issue of whether the Superior Court erred in holding that the defaulting vendee's claim for unjust

enrichment under Section 374 of the Restatement (Second) of Contracts was timely filed. *Assuming* such claim is cognizable;[1] we hold that the cause of action for unjust enrichment arose when the contract between the defaulting vendee and the vendors was terminated. As the claim for unjust enrichment was not filed within four years of such date, it is barred by the applicable statute of limitations. For the reasons that follow, we reverse the order of the Superior Court and reinstate the order of the trial court, which entered summary judgment in favor of Appellants.

The record establishes that on October 1, 1985, Stanley C. Sunday ("Stanley") entered into a Long–Term Agreement of Sale with Konstantinos Kakouras ("Konstantinos") whereby Stanley would sell a three-story commercial property housing a restaurant in Lancaster County. The purchase price for the property was set by agreement at $365,000.00, with Konstantinos' payment of $25,000.00 due at time of closing, $25,000.00 within two months of closing, and the balance to be paid off in monthly payments. (Long–Term Agreement of Sale, dated October 1, 1985, at 3). The Long–Term Agreement of Sale provided, *inter alia*, that, in the event of Konstantinos' default, Konstantinos authorized any attorney to file an amicable action in ejectment for possession of the premises. (*Id.* at 7–10). Moreover, the agreement permitted Konstantinos the right to assign his obligations under the agreement. (*Id.* at 11). The agreement, however, did not contain forfeiture or liquidated damages clauses.[2]

Konstantinos made monthly payments on the property until October 31, 1986, when he assigned the agreement to his son (the "Kakouras Assignment"), Dimitrious, a.k.a., James, Kakouras. ("James"). The Kakouras Assignment provided, *inter alia*, that Konstantinos assigned "all of his right, title, and

---

1. The parties do not dispute that the claim is cognizable.

2. Generally speaking, a forfeiture clause in a land sale contract specifies that payments made by the vendee or buyer will be retained by the vendor in the event of the vendee's default under the contract. James O. Pearson, Jr., J.D., *Modern status of defaulting vendee's right to recover contractual payments withheld by vendor as forfeited,* 4 A.L.R.4th 993 (1981).

interest in and to the aforesaid Long–Term Agreement of Sale." (October 31, 1986 Assignment at ¶ 1).

James made payments on the Long–Term Agreement of Sale until Stanley died on March 7, 1994. Stanley's daughter, Gail Sunday ("Gail"), one of the instant Appellants, was appointed executrix of Stanley's estate. Stanley's will devised fifty percent of Stanley's residuary estate to Gail and twenty-five percent each to his grandsons, Glenn Gubich and James Sunday, also Appellants in the matter *sub judice*. Rather than sell the restaurant property, each of the heirs (collectively "Appellants") decided to divide their interest in the property accordingly. Thus, on November 4, 1994, Gail, in her capacity as executrix of the estate, assigned and deeded Stanley's estate's interest in the Long–Term Agreement of Sale to herself and Stanley's grandsons as tenants-in-common (the "Executor's Deed and Assignment of November 4, 1994").

James' payments to Appellants continued until August 1, 1995. Appellants agreed that, as of August 1, 1995, the principal balance had been reduced to $243,821.85, reflecting a principal reduction of $71,178.15. James filed for bankruptcy in 1996. He defaulted in his obligations under the Long–Term Agreement of Sale. Appellants sought and, on October 29, 1996, were granted relief from the automatic stay to file an action in ejectment against James. On January 27, 1997, the Lancaster County Court of Common Pleas entered an order in connection with Appellants' ejectment action, terminating the Long–Term Agreement of Sale, terminating James' rights in the property, and granting immediate possession to Appellants (the "January 1997 Order"). The Order specifically read:

> The court further ORDERS: 1. [James'] rights under the Agreement of Sale shall be terminated. 2. The Recorder of Deeds of Lancaster County shall mark said Agreement of Sale on its records as terminated; and 3. [Appellants] shall be granted immediate possession of the premises.

*See* Exhibit "F", Interrogatories to Garnishee [sic], dated February 7, 2001. The most significant aspect of this order in terms of the disposition of this appeal is the fact that the trial court terminated the Long–Term Agreement of Sale. There-

fore, the contract which once linked James and Stanley's heirs ceased to exist. Appellants eventually sold the property on April 11, 1997, for $400,000, ultimately resulting in a net return of $362,363.10 from the sale of the property.

Set amidst the events surrounding the purchase, sale, and eventual resale of the restaurant are the facts and circumstances of Appellee, Gertrude R. Sevast ("Appellee"). Appellee had worked at the restaurant as a cashier/hostess. On April 15, 1990, while in the course of her employment, Appellee fell and injured her arm while carrying a pot of coffee. James did not carry workers' compensation insurance for his employees. Consequently, in 1992, Appellee obtained, as provided for in Section 429 of the Workers' Compensation Act, 77 P.S. § 931, a judgment in the Lancaster County Court of Common Pleas against James in the amount of $30,000 plus interest. Appellee preserved the judgment through a series of revival actions, until the judgment totaled $161,628.24.

On February 7, 2001, nearly four years after Appellants resold the restaurant, Appellee filed for a Praecipe for Writ of Execution in the Lehigh County Court of Common Pleas,[3] naming Appellants as Garnishees, for "all debts owed to" Appellee. (Writ of Execution, dated February 7, 2001). The Writ was accompanied by Interrogatories, thereby attaching all James' property in Appellants' possession. Appellee, in subsequent proceedings, contended that, following the April 1997 resale of the property, Appellants suffered no loss on the original Long–Term Agreement of Sale, and therefore, she was entitled, as James' creditor, to $121,178.51 in restitution for payments made by Konstantinos and James in connection with the Long–Term Agreement of Sale.

Appellee filed a Motion for Summary Judgment on October 2, 2001, basing her right to garnish Appellants upon *Lancellotti v. Thomas*, 341 Pa.Super. 1, 491 A.2d 117 (1985), in which the Superior Court adopted *Restatement (Second) of Con-*

3. Appellee transferred the judgment from Lancaster County to Lehigh County on February 6, 2001.

*tracts,* § 374 (1981) ("Section 374").[4,5] The effect of this portion of the Restatement permits limited restitution to a party in breach of contract. The trial court dismissed Appellee's motion, finding, *inter alia,* that it was unclear whether James had any rights under the Long–Term Agreement of Sale.

Prior to the scheduled trial in this matter, the parties filed cross-motions for summary judgment. Appellee, in her motion, reiterated her contention that James, and she, as his creditor, was entitled to relief under Section 374, since the original contract permitted Appellants and their predecessor to seek, on Konstantinos' or James' default, either termination of the contract or specific performance. Appellants' choice in terminating the agreement precluded any party from contractual remedies against the other. Appellee argued that the Appellants' ultimate resale of the property—for which she argued they suffered no loss—should not result in a windfall in the amount James and/or Konstantinos had paid to Appellants and their predecessor.

4. Section 374 provides:
 (1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.
 (2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.
 *Restatement (Second) of Contracts,* 374 (1981).

5. In *Lancellotti,* the Superior Court was faced with the issue of whether a defaulting purchaser of a business who has also entered into a related lease for the property can recover any part of his payments made prior to his default. The court rejected the common law rule that precluded a breaching buyer from recovering these payments and adopted Section 374 of the Restatement (Second) of Contracts. The *Lancellotti* court permitted restitution in limited circumstances. 491 A.2d at 120 n. 3. First, restitution must be offset by any damages suffered by the vendor. *Id.* Second, the measure of the benefit conferred must be limited to the actual enrichment and cannot exceed a ratable portion of the contract price. *Id.* Third, restitution is unavailable to the extent that a valid liquidated damages clause exists. *Id.* Finally, restitution is unavailable when the non-defaulting party maintains a right to specific performance. *Id.*

Appellants first argued in their motion that Appellee had no right to pursue an action on James' behalf; second, that Appellants were not proper garnishees under the Rules of Civil Procedure pertinent to garnishment actions; third, the trio of prior court orders extinguished James' and Appellee's rights against Appellants; fourth, laches; and, fifth, the statute of limitations.

The trial court dismissed Appellee's second motion for summary judgment and granted Appellants' cross-motion on December 31, 2002, thereby dismissing Appellee's garnishment action. The trial court resolved the issue by declaring that James' claim was unliquidated, and thus not subject to garnishment. Appellee appealed to the Superior Court, which reversed the trial court's decision *in toto* and remanded the matter to the trial court with instructions to enter summary judgment in Appellee's favor. *Sevast v. Kakouras*, 841 A.2d 1062, 1070 (Pa.Super.Ct.2003).

The Superior Court rejected Appellants' assertion that Appellee's claim was uncertain and thus not subject to garnishment. *Id.* Appellants had asserted that the claims were uncertain because the four-year statute of limitations on the equitable action had begun to run in 1995 when James first breached the Long–Term Agreement of Sale. On the contrary, the panel concluded that the statute of limitations began when the right to restitution under Section 374 ripened, i.e., when the value of Konstantinos' and James' performance exceeded the loss caused by his breach. *Id.* The court further found that such right did not arise until April 10, 1997, the date when Appellants received the proceeds from the resale of the property. *Id.* Given that Appellee filed her action on February 7, 2001, the Superior Court found her action to be within the four-year statute of limitations for this equitable action found at 42 Pa.C.S. § 5525. *Id.*

Appellants timely filed a petition for allocatur, which this court granted, *Sevast v. Kakouras*, 580 Pa. 352, 861 A.2d 257 (2004).[6] Our standard of review in reviewing an order

6. Our order granting allocatur was limited to the following four questions:

granting summary judgment permits us to disturb that order only if the court granting the motion committed an error of law or abuse of discretion. This matter presents a question of law, for which our scope of review is plenary. *Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001).

▮▮▮▮ The Pennsylvania Rules of Civil Procedure governing summary judgment instruct, in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action. Pa.R.C.P. No.1035.2(1). In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all

1. Whether the Superior Court's decision on an issue of first impression has the disastrous consequence of exposing estate beneficiaries to indefinite liability as a result of its conclusion that the statute of limitations on a claim under section 374 of the Restatement (Second) of Contracts begins to run *"only when* the value of performance exceeds the loss caused by the breach"?
2. Whether the Superior Court radically departed from the long-standing rule that summary judgment motions should be granted only in clear cases when it assumed material facts not of record, and based on those assumptions, granted restitution to Respondent in the amount of $121,178.15?
3. Whether the Superior Court departed from its own precedent in *Brown v. Candelora*, 708 A.2d 104 (Pa.Super.Ct.1998), by concluding that the amount of restitution was subject to garnishment when it failed to consider the fair rental value of the judgment debtor's decade-long possession of a valuable commercial property?
4. Whether Pennsylvania should permit a breaching party to bring a restitution claim pursuant to section 374 of the Second Restatement of Contracts?

As we are compelled to reverse on Appellants' first issue, there is no need for us to address their remaining contentions. We recognize that we *sua sponte* directed the parties to brief issue number four, regarding whether this Court should adopt Section 374 of the Restatement (Second) of Contracts. As noted, such provision was adopted . by the Superior Court in *Lancellotti*. We further acknowledge that there is common law in support of rejecting Section 374, which establishes that a defaulting vendee is not entitled to recover his part payment where that party has failed to fulfill his contractual obligations even if the non-defaulting vendor makes a profit by reason of the default. *Kaufman Hotel & Restaurant Co. v. Thomas*, 411 Pa. 87, 190 A.2d 434 (1963). We decline, however, to address the propriety of adopting Section 374 because such determination would not affect the disposition of this appeal considering our holding that Appellee's action is time-barred.

doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA,* 565 Pa. 211, 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205, 206 (1991).

 We now proceed to address whether Appellee's complaint was timely filed pursuant to the applicable statute of limitations. Generally speaking, the statute of limitations begins to run as soon as the right to institute and maintain the suit arises. *See Crouse v. Cyclops Industries,* 560 Pa. 394, 745 A.2d 606, 611 (2000). "Whether a complaint is timely filed within the limitations period is a matter of law for the court to determine." *Id.* The cause of action which Appellee brought before the court is based upon a theory of unjust enrichment.[7] According to statute, there is a four-year statute of limitations for such causes of action. *See* 42 Pa.C.S. § 5525(a)(4);[8] *Cole v. Lawrence,* 701 A.2d 987, 989 (Pa.Super.Ct.1997) (stating plaintiff's claim for unjust enrichment, an action based on a contract implied at law, is subject to a four-year statute of limitations).

 Appellants do not dispute the applicability of the four-year statute of limitations, nor do they disagree with *Crouse* regarding when a cause of action ripens. Appellants vigorously contest, however, the Superior Court's determination of when Appellee's right to maintain her action ripened. Appellants assert that the statute of limitations on an unjust enrichment action began on January 27, 1997, the date when the

---

7. An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 259 A.2d 443, 448 (1969). Quasi-contracts, or contracts implied in law, are to be distinguished from express contracts or contracts implied in fact. "[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Id.* at 449.

8. Section 5525(a)(4) provides that an action upon a contract implied in law, except an action subject to another limitation specified in this subchapter, must be commenced within four years. 42 Pa.C.S. § 5525(a)(4).

trial court terminated James' rights under the original Long–Term Agreement of Sale and Appellants first held both possession of the property and any payments made by James and Konstantinos. Following Appellants' theory, the limitations period for James, and, thus, Appellee, would have expired on January 27, 2001.[9] As Appellee's garnishment proceeding was filed February 7, 2001, Appellants argue that Appellee's suit was beyond the applicable limitations period, and thus barred by operation of the four-year statute of limitations set forth at 42 Pa.C.S. § 5525. They maintain that, otherwise, non-defaulting vendors would be exposed to indefinite liability, which would depend upon the time of resale and the resale value.

Appellee relies upon the analysis of the Superior Court, which, as stated above, concluded that the statute of limitations began to run on April 10, 1997, the date when Appellants received the proceeds from the resale of the property. The court found Appellee's action to be within the four-year statute of limitations as she filed it on February 7, 2001. For the following reasons, we agree with Appellants.

On January 27, 1997, the trial court terminated all of James' contractual rights to the property and awarded Appellants full possession of the property. Thus, Appellants possessed both the payments made under the contract as well as the property itself. Assuming such cause of action is viable, it is at this point that the right to maintain the unjust enrichment action arose. At this time neither Appellants nor James were able to maintain an action to enforce the contract or to recover contractual damages because the contract as a source of rights and obligations between the parties ceased to exist. As such, Appellants could expect no further payment from James. "As long as the seller remains ready, able, and willing to perform a contract for the sale of real property, the breaching vendee has no right to restitution of payments made prior to his default." *Lancellotti,* 491 A.2d at 121, citing 5A *Corbin on Contracts* §§ 1122–1135, 1130 (1964). Thus, any

---

9. January 27, 2001, was a Saturday, and thus, by operation of Pa.R.C.P. No. 106, the limitations period here would end on the following Monday, January 29, 2001.

right to restitution arose when the contract between the parties ceased. The Superior Court's analysis of the limitations question improperly placed the focus on the computation of damages. In the event the property did not sell within four years from the date the contract was terminated, the breaching vendee could prove the amount of the vendor's windfall through the expert testimony of an appraiser that would establish the property's present value.[10]

Accordingly, James', or Appellee's, right to restitution based on a theory of unjust enrichment ripened the day the Court of Common Pleas for Lancaster County terminated the Long–Term Agreement of Sale. The statute of limitations for a cause of action against Appellants thus expired on January 29, 2001. The undisputed facts of record show that neither James nor Appellee asserted any claim within the limitations period. Appellee filed her praecipe for Writ of Execution on February 7, 2001. Appellee's action, therefore, is barred as untimely. *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040, 1043 (1992) (stating that once the prescribed statutory period has expired, the complaining party is barred from bringing suit).

Thus, the Superior Court erred in concluding that Appellee was entitled to judgment as a matter of law. Accordingly, we reverse the order of the Superior Court and reinstate the order of the trial court, which dismissed Appellee's motion for summary judgment and entered summary judgment in favor of Appellants.

Jurisdiction relinquished.

Former Justices NIGRO and NEWMAN did not participate in the decision of this matter.

Justices CASTILLE, SAYLOR and BAER join the opinion.

Justice EAKIN files a concurring opinion.

---

10. We further note that commencing the statute of limitations on the date of the resale of the property would prove problematic if the non-breaching vendor subdivided the property and did not sell it in its entirety.

Justice EAKIN, concurring.

I agree with the majority's decision to vacate the Superior Court's order, as any claim for unjust enrichment under § 374 of the Restatement (Second) of Contracts would be barred by the applicable statute of limitations. While the parties have not contested whether such a claim is viable, current law provides a defaulting vendee is not entitled to recover partial payments where it failed to fulfill its contractual obligations, even if the non-defaulting vendor makes a profit by reason of the default. *Kaufman Hotel & Restaurant Company v. Thomas*, 411 Pa. 87, 190 A.2d 434 (1963). Thus, the defaulting vendee cannot bring an unjust enrichment claim here; our court cannot enforce a claim which current law prohibits, simply because the parties believe it should exist. For an unjust enrichment claim to be viable here, this Court would have to overturn *Kaufman Hotel.*

Thus I write separately, and would vacate the Superior Court's order based on *Kaufman Hotel* without reaching the statute of limitations question.