Filed 3/2/15  Hsieh v. Hsieh CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHIH WU HSIEH, | B250938 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC047528) |
| v. | |
| YANNIK HSIEH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jan A. Pluim, Judge.  Reversed and remanded with directions.

Law Office of J. Jay Chang, Jye Chang; Murtagh & Associates and Paul G. Murtagh for Plaintiff and Appellant.

Law Offices of Mark J. Warfel and Mark J. Warfel for Defendant and Respondent.

_____

**INTRODUCTION**

Chih Wu Hsieh (Chih)[1] appeals from a judgment in favor of his son, Yannik Hsieh, also known as Jason Hsieh (Jason), entered after the trial court found his action alleging a fraudulent transfer was barred by the statute of limitations under the Uniform Fraudulent Transfer Act (UFTA; Civ. Code, § 3439 et seq.).[2] This case arises out of the transfer of over $5 million in community property by Chih's former wife, Jui Chih Wang Hsieh, also known as Ruth Jui Chih Hsieh (Ruth), to the couple's sons, Jason and John Hsieh (John). On appeal, Chih contends that the statute of limitations only started to run once he obtained a judgment in 2010 in a family court separation action awarding him 100 percent of the marital community property as his separate property, and therefore this action filed in 2011 was timely.

At the heart of this case is whether California's adoption of the UFTA in 1986 supplemented or replaced the prior common law remedy to redress fraudulent conveyances.[3] Chih contends that the common law cause of action survives, citing to post-UFTA decisions in *Cortez v. Vogt* (1997) 52 Cal.App.4th 917 (*Cortez*) and *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044 (*Macedo*). In *Cortez* and *Macedo*, our colleagues in the Fourth and First Districts, respectively, held that the statute of limitations applicable to common law fraudulent conveyance claims applied and that the limitations period started to run when the plaintiff obtained a judgment. Jason argues that *Cortez* and

---

[1]  Because the members of the family share the same last name, we refer to them by their first names, not out of disrespect, but for convenience and clarity. (*In re Marriage of Kelkar* (2014) 229 Cal.App.4th 833, 836, fn. 2; *Farmers New World Life Ins. Co. v. Rees* (2013) 219 Cal.App.4th 307, 310, fn. 1.)

[2]  Unless otherwise specified, all further statutory references are to the Civil Code.

[3]  In the statutes and case law, the phrases "fraudulent transfer" and "fraudulent conveyance" are used interchangeably. We use both phrases in this opinion, referring to the same type of fraudulent transfer.

*Macedo* do not apply to Chih's claims and that the trial court correctly applied the UFTA statute of limitations to bar Chih's action.

We find that the UFTA was intended to supplement the common law remedy for fraudulent conveyance and follow the reasoning of our colleagues in the First and Fourth Districts. While a plaintiff under the UFTA is not required to wait until he or she has a judgment in order to file an action to set aside a fraudulent transfer, we find that if the plaintiff opts first to obtain the judgment, the subsequent action for fraudulent transfer is not barred if brought in a timely manner thereafter.

We reverse and remand with instructions to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. *The Family Law Proceedings and First Transfers by Ruth*

Chih and Ruth were married in 1966. As of 1997, Chih was living in Taipei and Ruth was living in the United States. On September 22, 1997, Ruth filed a petition for legal separation (1997 separation action) and, on November 12, 1998, she filed a petition for dissolution of marriage (1998 dissolution action).

Chih cannot speak, read, or write English. Ruth is fluent and can read and write in English. Ruth regularly sent documents written in English to Chih in Taipei for his signature. Chih trusted Ruth and did not have the documents translated before he signed them. At Ruth's request, Chih signed a blank notice of acknowledgment and receipt for service of summons and petition for legal separation, but he did not know what he was signing.

Ruth did not serve Chih with the summons and petition in either the 1997 or 1998 actions. Nor did she notify Chih of the actions. As a result, Chih did not appear in either

---

[4] The facts are taken from the judgment in the legal separation action Ruth filed against Chih, admitted as Exhibit 1 in the bifurcated trial in this action, and the statement of decision filed after trial.

3

action and, at sometime prior to 2000, Chih's defaults were taken in both actions and default judgments were entered.

During the period from August 16, 2001 through August 21, 2006 Ruth made 14 wire transfers totaling $1,444,500 to Jason's bank account in Hong Kong. Chih later learned of Ruth's actions and on September 7, 2006 moved to set aside the defaults and default judgments. On that date, on an ex parte basis, the court reinstated the automatic temporary restraining orders (ATROs) in both actions as to "any remaining assets." Ruth was served with the motions and the ATROs. Chih also recorded a lis pendens on the property located at 2014 El Sereno Avenue in Arcadia on September 11, 2006. At some point in 2006, the default and default judgments were vacated and the two actions were reinstated.[5]

## B. *Additional Transfers of Money and Property in 2006 and 2007*

From September 13 through October 17, 2006, Ruth liquidated $3,950,000 in community property stocks. She transferred $3,330,000 of the proceeds to Jason in Hong Kong, $120,000 to her godson in Taipei, and $500,000 to her own bank accounts.

On November 17, 2006, Ruth transferred the El Sereno Avenue property to herself as trustee of the JC Hsieh Living Trust. In August 2007, Ruth sent Chih a deed to the El Sereno Avenue property for his signature with the intent to transmute Chih's community interest in the property to Ruth's separate property. Ruth did not inform Chih of the legal significance of the document. As was the parties' custom, Chih signed the document without having it translated. Chih was unaware of the legal significance of the document and had no intention of giving Ruth his interest in the El Sereno Avenue property.

---

[5]    It is not clear from the limited record when the defaults and default judgments were vacated, but the parties appear to assume this occurred around the time the ATROs were reinstated.

4

Also in 2007, Ruth obtained a $650,000 loan secured by a deed of trust on the El Sereno Avenue property. She sent $645,000 of the proceeds to Jason in Hong Kong. Ruth also disposed of an additional $300,000 in community property.

## C. *Trial and Entry of Judgment in the 1997 Separation Action*

On August 7, 10 and 11, 2009, the court held an evidentiary trial in the 1997 separation action. Ruth failed to appear at trial, and her "[p]etitions in each case were stricken."[6] Chih obtained a judgment in the 1997 separation action on January 7, 2010. The family law court ordered Ruth to pay Chih 100 percent of the amount of community property funds transferred to Jason pursuant to Family Code section 1101, subdivision (h), finding the transfers were made in violation of the ATROs and in breach of Ruth's fiduciary duties, and that Ruth's actions were malicious, oppressive and fraudulent.[7] The property interest was also awarded to Chih "as his sole and separate property."

The court also held that the El Sereno Avenue property was community property and awarded it to Chih. It found the purported transmutation of the property was invalid and violated the ATROs, and that Ruth's actions breached her fiduciary duties and were malicious, oppressive and fraudulent. The court likewise awarded the property to Chih as his sole and separate property.

---

[6] The final judgment was entered in the 1997 separation action. The attachment to judgment in that action provides that Ruth's "[p]etitions in each case" were stricken, which we take to mean that the petition in the 1998 dissolution action was also stricken at that time.

[7] Family Code section 1101, subdivision (h), provides that a spouse may recover 100 percent of an asset transferred in breach of the spouse's fiduciary duty where there is a showing of "oppression, fraud, or malice" under section 3294, subdivision (a).

**D.** *The Filing of This Action for Fraudulent Transfer and Conversion*

Chih filed this action against Ruth, Jason and John on June 10, 2011 alleging causes of action for fraudulent transfer and conversion.[8]  Jason answered and denied all the allegations of the complaint.  He alleged 16 affirmative defenses, including that the action was barred by the statutes of limitations set forth in Code of Civil Procedure sections 337, 338 and 339.  Notably, Chih does not allege in his complaint that the action was brought under the UFTA; neither does Jason assert as an affirmative defense the statute of limitations under the UFTA.

The court bifurcated trial as to Jason's statute of limitations defense, which trial was held on April 22, 2013.  At trial, the court framed the issue as whether the action was barred by the statute of limitations contained in the UFTA under section 3439.07, subdivision (a).  Both counsel argued their position as to whether the holding by the Fourth District in *Cortez* applied to toll the statute of limitations.  Counsel for Jason argued that *Cortez* was inapplicable because at the time of the transfers there was no pending action as a result of entry of default judgments in both the 1997 separation action and the 1998 dissolution action.  Counsel for Chih argued that under the subsequent holding by the First District in *Macedo*, no pending action was necessary to toll the statute of limitations.  Quoting from *Macedo*, he argued that a fraudulent conveyance "may also be attacked by . . . common law action.  If and as such an action is brought, the applicable statute of limitation is [Code of Civil Procedure] section 338[, subdivision] (d)."[9]  (*Macedo*, *supra*, 86 Cal.App.4th at p. 1051.)

In its statement of decision, the court held section 3439.09, subdivision (a), provided the applicable statute of limitations of "four years after the transfer was made or

---

[8]    Chih dismissed Ruth as a defendant; John's default was taken.  The trial as to the statute of limitations proceeded only as to Jason on the fraudulent transfer claim.

[9]    Section 338, subdivision (d), of the Code of Civil Procedure provides for a three-year statute of limitations applicable to "[a]n action for relief on the ground of fraud or mistake."  As we discuss below, California courts have applied this statute of limitations to common law claims for fraudulent transfers.

the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." In reaching this holding, the court adopted the argument made by Jason's counsel, stating that it "has considered the decision in *Cortez* and has concluded that it does not govern the present case. . . . By contrast with *Cortez*, there was no 'pending lawsuit' when the transfers challenged in the instant case took place. Default had been entered before 2000, and remained in place at the time of all transactions involving Jason Hsieh challenged herein."

The court concluded that because the complaint was filed on June 10, 2011, "any action challenging an alleged fraudulent transfer taking place earlier than June 10, 2007 would be time-barred. Here, all of the challenged transfers to Jason Hsieh occurred prior to this date. Hence, Plaintiff's claims against Jason Hsieh are time-barred." The court also found that Chih's claims were not saved by the one-year extension for delayed discovery because Chih was on notice of the alleged fraudulent transfers in October 2009 when the family law court published its proposed findings. Thus, Chih "was on notice of his current alleged claims far more than one year in advance of filing this lawsuit."

The court entered judgment in favor of Jason on June 18, 2013.

## DISCUSSION

### A. *Standard of Review*

"Where . . . 'the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law.'" (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1322-1323, quoting *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611; accord, *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1304.) We therefore review the statute of limitations question de novo and are not bound by the trial court's determination. (See *William L. Lyon & Associates, supra*, at p. 1304.)

**B.  *The Uniform Fraudulent Transfer Act***

1.  *The Provisions of the UFTA*

The UFTA was enacted in 1986 as part of a line of statutes that "'declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims.'  [Citation.]"  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664 [applying UFTA to marital settlement agreement].)  The UFTA was intended to expand creditor remedies by allowing a creditor to bring a suit to set aside a fraudulent transfer before the claim has matured by obtaining a judgment or lien.  (*Weisenburg v. Cragholm* (1971) 5 Cal.3d 892, 896 [interpreting comparable provisions of predecessor Uniform Fraudulent Conveyance Act (UFCA)]; *Cortez*, *supra*,  52 Cal.App.4th at p. 930 & fn. 12.) Indeed, by its own provisions, the UFTA supplements existing legal remedies:  "Unless displaced by the provisions of this chapter [the UFTA], the principles of law and equity, including the law . . . relating to . . . fraud, misrepresentation, . . . or other validating or invalidating cause, supplement its provisions."  (§ 3439.10.)

Under the UFTA, a transfer by a debtor is fraudulent as to a creditor if the debtor made the transfer (1) "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor"; or (2) "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:"  "(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction"; or  "(B) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."  (§ 3439.04, subd. (a).)

For purposes of the UFTA, a debtor is "a person who is liable on a claim," and a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  (§ 3439.01, subds. (b) & (e).)  A creditor who is

damaged by a transfer under the UFTA can set aside the transfer or seek other remedies as set forth in the act. (§ 3439.07, subd. (a).)[10]

### 2. *The UFTA Statute of Limitations*

Under section 3439.09, subdivision (a), a cause of action under the UFTA must be brought within four years "after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." (See § 3439.09, subd. (b).) The UFTA also provides that any claim under the UFTA must be brought "within seven years after the transfer was made or the obligation was incurred." (§ 3439.09, subd. (c).)

### 3. *The Statute of Limitations Applicable to Common Law Claims for Fraudulent Transfers*

Section 338, subdivision (d), of the Code of Civil Procedure provides for a three-year statute of limitations applicable to "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

We next turn to the case law interpreting the applicable statute of limitations for a claim for fraudulent transfers.

---

[10] Other remedies include, inter alia, obtaining an attachment against the asset; an injunction against further disposition of the asset or its proceeds; or appointment of a receiver over the asset. (§ 3439.07, subd. (a).) In certain circumstances, the creditor can recover judgment for the value of the asset transferred. (§ 3439.07, subd. (c).) In an action under the UFTA, a judgment may be entered against "[t]he first transferee of the asset or the person for whose benefit the transfer was made." (§ 3439.08, subd. (b)(1).)

9

**C. *The Statute of Limitations on Chih's Fraudulent Transfer Claim Began To Run When Judgment Was Entered in the 1997 Separation Action***

1. *California courts have held that the statute of limitations for a fraudulent transfer claim runs from when a creditor obtains a judgment.*

Prior to adoption of the UFTA in 1986, our Supreme Court applied the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d), to common law claims for fraudulent conveyances. (*Adams v. Bell* (1936) 5 Cal.2d 697, 703 (*Adams*); *Brown v. Campbell* (1893) 100 Cal. 635, 644.) In *Adams*, plaintiff Adams sought to void the conveyance of real property from defendant Bell to Bell's son. At the time of the conveyance, Adams had a pending action against Bell, and later obtained a judgment for $4,500. Our Supreme Court held with respect to the statute of limitations under Code of Civil Procedure section 338, subdivision 4,[11] "[o]rdinarily, such cause of action [for fraudulent conveyance] would accrue on date of judgment," unless the creditor later discovers the fraud. (*Adams*, *supra*, at p. 703.)

The court in *Adams* cited to its earlier decision in *Brown v. Campbell*, *supra*, 100 Cal. 635. (*Adams*, *supra*, 5 Cal.2d at p. 703.) In *Brown*, the court held with respect to a cross-complaint for fraudulent conveyance that "it has been held in this state that the statute of limitations [under Code of Civil Procedure section 338] does not begin to run against such an action by a creditor until he has obtained such a judgment against his debtor, because until then he has no right of action." (*Brown*, *supra*, at pp. 644-645.)

*Cortez* was the first California case to interpret the language of the UFTA statute of limitations. (*Cortez*, *supra*, 52 Cal.App.4th at p. 929.) In *Cortez*, our colleagues in the Fourth District held: "In cases such as this where there is an alleged fraudulent transfer made during a pending lawsuit that will establish whether in fact, and the extent to which, a debtor-creditor relationship exists, we conclude the limitation period does not

---

[11]    Former subdivision 4 of Code of Civil Procedure section 338 was later codified as the current section 338, subdivision (d).

commence to run until the judgment in the underlying action becomes final." (*Id*. at p. 937.)

In reaching this holding, the court in *Cortez* relied in part on case law under prior law, including the UFCA (*Lind v. O.N. Johnson Co.* (1938) 204 Minn. 30, 37 [282 N.W. 661]) and prior common law on fraudulent conveyances (*Adams*, *supra*, 5 Cal.2d at p. 703), to hold that the statute of limitations on fraudulent transfers did not run until a judgment was obtained against the debtor. (*Cortez*, *supra*, 52 Cal.App.4th at pp. 932-935.)

In *Cortez*, plaintiff Cortez brought a wrongful termination action against his employer and obtained a judgment in that action. After the judgment became final, Cortez learned that his employer had no assets because it had previously sold its assets, but not its liability, to a third party, McDonnell Douglas. (*Cortez*, *supra*, 52 Cal.App.4th at pp. 923-924.) The court found under these facts that "it would be inappropriate to begin the running of the limitations period for the fraudulent transfer action before the creditor choosing to pursue a judgment actually obtains the judgment." (*Id*. at p. 931.) A key underpinning of the ruling in *Cortez* was that it was the final judgment in the underlying action that established "the actual legal existence of a debtor-creditor relationship . . . ." (*Id*. at p. 929.)

In California, the First and Fourth Districts have similarly found that the statute of limitations on a fraudulent transfer claim is tolled until the creditor obtains a judgment against the debtor. (See, e.g., *Macedo*, *supra*, 86 Cal.App.4th at p. 1051 ["the cause of action accrues not when the fraudulent transfer occurs but when the judgment against the debtor is secured"]; *Estate of Myers* (2006) 139 Cal.App.4th 434, 440 ["the statute of limitations on that common law fraudulent conveyance claim did not commence running until Lissoy had obtained a *final judgment* against Myers in the underlying action"].

Notably, both *Macedo* and *Estate of Myers* based their holdings not on the language of the UFTA statute of limitations but on the statute of limitations applicable to a common law claim for a fraudulent transfer under Code of Civil Procedure section 338, subdivision (d), relying on *Adams*, *supra*, 5 Cal.2d at p. 703. (See *Macedo*, *supra*, 86

11

Cal.App.4th at pp. 1049-1051; *Estate of Myers*, *supra*, 139 Cal.App.4th at p. 440.) By relying on the statute of limitations applicable to a common law claim for a fraudulent conveyance, both *Macedo* and *Estate of Myers* avoid the issue that has divided courts around the country of whether the UFTA's statute of limitations should be interpreted to start running upon a creditor obtaining a judgment even though the plain language of the UFTA provides that the statute of limitations runs "four years after the *transfer was made* or the obligation was incurred . . . ." (§ 3439.09, subd. (a), italics added.)[12]

As the court held in *Macedo*, "[w]e will not jump into the middle of the disagreements between our sister court in San Diego and the Illinois court," noting that the court in *Cortez* had the benefit of being able to rely on the Supreme Court's holding in *Adams*, *supra*, 5 Cal.3d 697, and the Supreme Court's denial of review in *Cortez*.[13] (*Macedo*, *supra*, 86 Cal.App.4th at p. 1051, fn. 6, citing *Levy v. Markal Sales Corp.*, *supra*, 724 N.E.2d at pp. 1011-1012.)

---

[12] As the Hawaii Supreme Court recently held, rejecting the reasoning of *Cortez*, "'the explicit language [of the UFTA] provides that the four-year provision runs from the date of transfer rather than the date of judgment.'" (*Schmidt v. HSC, Inc.* (2014) 131 Hawai'i 497, 511 [319 P.3d 416], quoting *SASCO 1997 NI, LLC v. Zudkewich* (2001) 166 N.J. 579, 586 [767 A.2d 469]; accord, *Moore v. Browning* (2002) 203 Ariz. 102, 109-110 [50 P.3d 852, 859-860]; *Levy v. Markal Sales Corp.* (2000) 311 Ill.App.3d 552, 557 [724 N.E.2d 1008]; *Gulf Insurance Co. v. Clark* (2001) 304 Mont. 264, 275 [20 P.3d 780]; *K-B Bldg., Co. v. Sheesley Constr., Inc.* (Pa.Super. 2003) 833 A.2d 1132, 1136.) Other courts have approved of the reasoning of *Cortez*, stating that it "sensibly holds that the statute of limitations does not begin to run as long as the creditor's claim has not yet matured, is still merely potential." (*GEA Group AG v. Flex-N-Gate Corp.* (7th Cir. 2014) 740 F.3d 411, 417-418; accord, *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.* (3d Cir. 2003) 331 F.3d 406, 416-417; see also *In re Valente* (1st Cir. 2004) 360 F.3d 256, 261.)

[13] Our Supreme Court denied review in *Cortez* on April 30, 1997. (See *Macedo*, *supra*, 86 Cal.App.4th at p. 1051.) As the court explained in *DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 178: "Although this court's denial of a hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of this court . . . , it does not follow that such a denial is without significance as to our views."

Neither of the parties here argues that *Cortez* was wrongly decided.  Chih relies on the holdings in *Cortez* and *Macedo* to argue that the statute of limitations did not run until Chih obtained a judgment in the 1997 separation action, which became final on January 7, 2010.  Jason argued at trial that *Cortez* was inapplicable on the facts here because there was no "pending lawsuit" at the time the fraudulent transfers were made given that default judgments had been entered in both the 1997 separation action and the 1998 dissolution action, which defaults were not vacated until after all the transfers were made.  Adopting this argument, the trial court applied the UFTA limitations period of four years from the date of transfer or one year from the date of discovery of the fraudulent transfer and found all of Chih's claims were barred.

Contrary to the trial court's holding, we find the reasoning in *Macedo* persuasive in holding that the statute of limitations under Code of Civil Procedure section 338, subdivision (d), applies to a fraudulent transfer claim regardless of whether there is a pending action at the time of the transfer.  (*Macedo*, *supra*, 86 Cal.App.4th at p. 1051 & fn. 6.)  As the court held, Code of Civil Procedure section 338, subdivision (d), "applies equally to litigation, such as this, timely commenced after entry of a court order that first establishes the existence of a creditor-debtor relationship, although outside of the period of limitations established by the UFTA."  (*Macedo*, *supra*, at p. 1051, fn. 6.)  Indeed, in *Macedo* and *Estate of Myers*, *supra*, 139 Cal.App.4th at p. 437, the underlying action was not pending at the time the action for fraudulent transfer was filed.  (See *Macedo*, *supra*, at pp. 1046-1047.)

The facts here are similar to those in *Macedo* and *Estate of Myers*.  In both cases, the plaintiff asserting the fraudulent transfer claim obtained a judgment against the party who transferred the property, which entitled him to proceed against the transferee for a fraudulent transfer.  In *Macedo*, plaintiff Macedo's fraudulent transfer action alleged a fraudulent transfer by the defendant Bosio to the Bosio Revocable Trust in 1993.  As of 1993, no action was pending.  Macedo sued Bosio in 1999 and obtained a judgment that year prior to filing the fraudulent transfer action.  As in this case, Macedo's lawsuit

13

alleged a fraudulent transfer without relying on the UFTA. (*Macedo*, *supra*, 86 Cal.App.4th at pp. 1046-1047.)

The First District held that it was error for the trial court to find the action for fraudulent transfer was barred under the UFTA's statute of limitations without considering whether the action was barred by the statute of limitations under Code of Civil Procedure section 338, subdivision (d), applicable to common law claims for fraudulent transfer. (*Macedo*, *supra*, 86 Cal.App.4th at p. 1052.) The court held: "The rule deriving from that case [*Cortez*] and its reliance on the *Adams* line of authority is unmistakable: the UFTA is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked. They may also be attacked by, as it were, a common law action. If and as such an action is brought, the applicable statute of limitations is [Code of Civil Procedure] section 338[, subdivision] (d) and, more importantly, the cause of action accrues not when the fraudulent transfer occurs but when the judgment against the debtor is secured . . . ." (*Id*. at p. 1051.) The court remanded the case for the trial court to consider the timeliness of the action under Code of Civil Procedure section 338, subdivision (d). (*Id*. at p. 1052.)

Similarly, in *Estate of Myers*, *supra,* the fraudulent transfer action was filed with respect to a 1999 sale of property by Myers to her daughter's boyfriend. At the time of the conveyance, a prior lawsuit against Myers had been stayed after Myers filed for bankruptcy and had not yet been reinstituted. Plaintiff Lissoy later reinstituted the lawsuit and obtained a civil judgment against Myers. Division Three of the Fourth District held that the action challenging the sale of property to the boyfriend was "a classic fraudulent conveyance claim" and that the statute of limitations "did not commence running until Lissoy had obtained a *final judgment* against Myers in the underlying action," citing to *Adams*, *Cortez*, and *Macedo*. (*Estate of Myers*, *supra*, 139 Cal.App.4th at p. 440.)

In light of the reference in some of the post-UFTA cases to a judgment that established "the actual legal existence of a debtor-creditor relationship" (*Cortez*, *supra*,

14

52 Cal.App.4th at p. 929), we next turn to the question of when Chih became a creditor under the Family Code.

    2. *Under the Family Code, Chih became a creditor when the family law court ordered that 100 percent of the marital community property was the "sole and separate property" of Chih.*

Jason argues for the first time on appeal that the underlying dissolution action was not necessary to establish a creditor-debtor relationship between Chih and Ruth in light of California's Family Code provisions.[14] Chih responds that, as in *Cortez* and *Macedo*, he did not become a "creditor" until a judgment was entered in his favor in the 1997 separation action awarding him 100 percent of the marital property as his "sole and separate property." We agree with Chih.

To support his argument, Jason cites to the cases that hold that a spouse is the "owner" of his or her community property share of property, not a creditor. (See *Phillipson v. Board of Administration* (1970) 3 Cal.3d 32, 44 [wife "claims not as a creditor, but as an owner with a 'present, existing, and equal interest'"], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14; accord, *Patrick v. Alacer Corp.* (2011) 201 Cal.App.4th 1326, 1338 [same]; *In re Marriage of Fithian* (1977) 74 Cal.App.3d 397, 403 [same].) Jason misses the point — while Chih was an "owner" of the marital community property during his marriage to Ruth, it was not until the family law court awarded him 100 percent of the property *as his separate property* that he became a creditor in relation to Ruth.

---

14    While as a general rule issues not raised in the trial court will not be considered on appeal, a litigant may raise for the first time on appeal "a pure question of law which is presented by undisputed facts." (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [considering new argument as to exhaustion of administrative remedies]; accord, *Suarez v. City of Corona* (2014) 229 Cal.App.4th 325, 333 [exercising discretion to consider issue of statutory construction raised for first time on appeal].)

Jason also argues that a spouse has the right during the marriage to set aside 100 percent of a gift of community property made without his or her consent, thus making it unnecessary for Chih to have obtained a judgment in the 1997 separation action. Under the Family Code, "[a] spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, without the written consent of the other spouse. . . ." (Fam. Code, § 1100, subd. (b).) Further, "[a] gift made by one spouse in violation of this section is voidable by the other spouse in its entirety during the donor spouse's lifetime if the community has not yet been dissolved . . . ." (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1070 [court voided gift by husband to children under predecessor statute to Family Code section 1101, subdivision (b)]; see also *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 46 [the attempted transfer of community property by one spouse "is subject to a timely action during the marriage to avoid it"].)

In *Stephenson*, the wife filed a petition for dissolution and to quiet title to property that her husband had transferred to their children. The wife joined the children in the action as claimants. The court held that because the transfer from the husband to the children was without the wife's consent, it was made in violation of the predecessor statute to Family Code section 1101, subdivision (b),[15] and the court voided those gifts to the children. (*In re Marriage of Stephenson*, *supra*, 162 Cal.App.3d at p. 1073.)

While Jason is correct that Chih could have joined Jason as a party to the 1997 dissolution action,[16] Jason cites to no authority for Family Code section 1101,

---

[15] The court in *Stephenson* relied upon former Family Code section 5125, subdivision (b) (*In re Marriage of Stephenson*, *supra*, 162 Cal.App.3d at p. 1071), which was later recodified as Family Code section 1101, subdivision (b).

[16] See California Rules of Court, rule 5.24 ["[a] person who claims or controls an interest in any matter subject to disposition in the proceeding may be joined as a party to the family law case"]; *Babcock v. Superior Court* (1994) 29 Cal.App.4th 721, 725 ["[j]oinder is proper where a spouse alleges that the other spouse has illegally made a gift of community funds"].

subdivision (b), being the exclusive remedy for Chih to set aside the fraudulent transfers of assets to Jason. Rather, once Chih obtained a judgment finding that 100 percent of the marital assets were his separate property, he became a creditor with respect to his claim to recover those assets. Because Ruth had already transferred the assets to Jason and John, Chih properly filed a claim for fraudulent transfer against Ruth, Jason and John.

Further, we follow the holdings in *Adams*, *Brown*, *Macedo* and *Estate of Myers*, under which the statute of limitations on Chih's common law claim for fraudulent transfer did not commence to run until Chih became a creditor upon entry of the judgment. Accordingly, the statute of limitations in Code of Civil Procedure section 338, subdivision (d), commenced to run as of January 7, 2010, when Chih obtained the judgment against Ruth, and this lawsuit — filed in 2011 — was timely.[17] On this basis, we reverse and remand to the trial court. The trial court on remand should consider the action's timeliness under Code of Civil Procedure section 338, subdivision (d).

**D.** *The Trial Court Should Consider Whether Chih Is Barred From Recovering on Any Transfers Under the Seven-Year Statute of Limitations*

Jason argues in the alternative that 10 of 14 of Ruth's transfers to Jason are barred by the seven-year statute of limitations in section 3439.09, subdivision (c). That section provides: "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." (§ 3439.09, subd. (a).) The court in *Macedo* held that "by its use of the term

---

[17] While not argued by Chih, we note that under Code of Civil Procedure section 338, subdivision (d), a claim for fraudulent transfer does not "accrue" until the aggrieved party discovers the facts constituting the fraud. Therefore, in light of the stipulated fact that Chih first discovered the fraudulent transfers to Jason in October 2009, his claim would have been timely when he filed this action on June 10, 2011, less than three years from his discovery of the fraud. We find that Chih's action was timely either under the theory that the statute started to run upon entry of the judgment in the 1997 dissolution action or upon Chih's discovery of the fraud.

17

'[n]otwithstanding any other provision of law,' the Legislature clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." (*Macedo*, *supra*, 86 Cal.App.4th at p. 1050, fn. 4.)

We find the *Macedo* court's construction of the phrase "notwithstanding any other provision of law" persuasive. The Legislature did not use this phrase in setting the four-year statute of limitations under subdivisions (a) or (b) of section 3439.09. By including this phrase in subdivision (c), we interpret the Legislature's intent to set a maximum limitations period of seven years for all fraudulent transfers, whether the action is brought under common law or the UFTA. Any other reading would make this language superfluous. (See *Klein v. United States of America* (2010) 50 Cal.4th 68, 80 ["courts must strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous"].)

Because the trial court found Chih's action is barred in its entirety by the four-year statute of limitations, it did not consider the extent to which Chih's action to recover for specific transfers was barred by the seven-year limitations period. On remand, the trial court should consider the timeliness of Chih's claims under the seven-year statute of limitations in section 3439.09, subdivision (c). Specifically, it should determine whether any of the alleged fraudulent transfers were made more than seven years prior to the filing of this action.

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.  Chih is awarded his costs on appeal.


FEUER, J.[*]


We concur:


PERLUSS, P. J.


WOODS, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.